EMBRY, Justice.
Appeal by Ronald and Mary Tidwell from a judgment entered by the trial court deny *127 ing them damages and dissolving a preliminary injunction. We affirm.
The Tidwells filed a bill for an injunction to enjoin the foreclosure sale of their property pursuant to an alleged default on a mortgage. Named as defendants were the Iron and Steelworkers Credit Union, Inc.; Robert L. Hall, its president, and Maurice Rogers, attorney for Credit Union in the foreclosure sale. A temporary restraining order, followed by a preliminary injunction, was issued by the court and the action was set for final hearing on the merits. Before trial, the Tidwells, by amendment, added Loyal American Insurance Company as a party defendant to the suit.
The action sought to establish disability insurance coverage in connection with a loan and to secure the benefits from the coverage. Alternatively, the Tidwells claimed the Credit Union, through its agents and attorney misrepresented there was such insurance; or negligently failed to inform the Tidwells there was no insurance; or negligently failed to procure insurance to pay the mortgage indebtedness in the event of disability. The Tidwells also sought damages for delay in the construction of their house for Credit Union’s failure to advance additional monies as a construction loan. The defendants denied the Tidwells’ claims and the action was submitted to the trial judge, who heard the evidence without a jury.
The trial court’s judgment provides an excellent summary of the evidence:
“1. * * * on December 19, 1975, the Plaintiffs entered into a loan agreement with the Defendant, Iron and Steelworkers Credit Union, wherein the Plaintiffs borrowed from the credit union the sum of $48,677.93 together with a finance charge of $1,460.34 for a period of ninety days. The repayment of said loan to be one installment due on March 18, 1976. The proceeds of said loan included the refinancing of previous loans borrowed by the Plaintiffs from the credit union evidenced by prior notes and additional sums to be advanced in the amount of $22,776.55. It was known that the monies borrowed by the Plaintiffs were used and to be used for the reconstruction of a house that Plaintiffs had purchased and moved to land owned by them. The credit union had further agreed that when the reconstruction of the house was completed it would enter into a permanent real estate loan with the Plaintiffs for seventy-five percent of the appraised value of the property at a stipulated interest rate and term.
“On the disclosure form and note of December 19, 1975, Mr. Tidwell signed the form declining Credit Life Insurance, but agreed to a charge of $253.82 for Life Insurance. The closing statement prepared by the closing attorney designated this insurance charge as ‘Mortgage Protection Insurance Premium $253.82.’
“2. Tidwell failed to have a physical examination to institute the life insurance coverage and the life insurance policy was not issued. The premium charged for the policy was thereafter credited to Tidwell’s loan account.
“3. The credit union offers to its borrowers for a premium charge credit life insurance which pays off the indebtedness in the event of death or total and permanent disability to a maximum of $10,000. The loan note and disclosure form signed by Mr. Tidwell provide lines for the borrower to accept or decline such coverage. As previously stated, Tidwell declined such insurance.
“4. Tidwell had previously borrowed money from the credit union in connection with the construction on three occasions. He requested and paid for credit life, insurance on the first two loans on July 15, 1974 for $3,000 and on December 26,1974 for $11,494.18. He declined credit life insurance on the loan of April 25, 1975 for $15,279.71. The evidence showed that on each occasion when Tidwell requested credit life, a certificate was given to him describing the coverage. No such certificate was given in connection with the December 19, 1975 loan. Tidwell was also made aware of the credit life disability benefits by a pamphlet sent to all *128 members describing the advantages of credit life coverage.
“5. The house construction required considerably more time and money to complete then planned by Tidwell and the December 19, 1975 loan was made to consolidate the prior loans that had matured and to loan the final sums needed for completion, all leading to a long-term loan.
“6. Construction was further delayed by weather and unanticipated costs and the credit union extended the last loan. On June 9, 1976, Tidwell was advised by letter that he had until June 21 to pay the debt. At this time the credit union was attempting to close the permanent loan. On July 14, 1976, Tidwell suffered a heart attack and has been unable to resume his regular employment since that date. His physician testified that Tidwell may have possible future disability. During the months of August, September and October, 1976, the credit union’s attorney attempted to have the loan closed with Tidwell’s power of attorney, but Tidwell’s attorney refused to do so for the stated reason of possibly endangering Tidwell’s health.
“The credit union began foreclosure of the December 19, 1975 loan in November, 1976 and this action was thereafter filed.”
Upon this evidence the trial court rendered judgment against the Tidwells. The trial court found: no contract of insurance providing disability benefits was ever sought or requested by the Tidwells in connection with the loan in question; there was no agreement, expressed or implied, between the Tidwells and Credit Union for Credit Union to provide disability insurance in connection with the loan; the only representations made by Credit Union were to the effect disability insurance was available if desired, but the Tidwells declined this insurance; Credit Union was not negligent in failing to provide disability insurance; and Credit Union was in no way responsible or caused the delay in construction of the house. The judgment decreed that the relief sought by the Tidwells was denied and dissolved the preliminary injunction.
In brief, the Tidwells advance several theories for reversal of the trial court’s judgment; however, all of the theories involve factual disputes. An example of such is the Tidwells’ pivotal contention that the trial court erred in finding no contract of insurance providing disability benefits. The Tidwells contend that at the closing they requested disability protection and an agent of Credit Union stated Credit Union would purchase mortgage protection insurance. The Tidwells claim the premium was paid with the understanding mortgage protection insurance included disability benefits.
Reviewing the record, it shows there was conflicting evidence on this point. The evidence includes opposing testimony to the effect that at no time was there ever a request or conversation with any of the defendants, or their agents, concerning a desire for disability insurance made by the Tidwells. The Tidwells admit the evidence was disputed as to whether there was a request for disability insurance or not.
When reviewing cases of this kind, it is well recognized that this court cannot substitute its judgment for that of the trial court as to the effect to be given conflicting oral testimony dealing with questions of fact. McCaghren v. McCaghren, 294 Ala. 89, 312 So.2d 384 (1975); White v. Sims, 295 Ala. 244, 326 So.2d 733 (1976).
There was substantial evidence to support the findings of the trial court and the conclusions and holding based upon those findings are correct under applicable law. This being the case the judgment was neither clearly erroneous nor manifestly unjust. Rafield v. Johnson, 294 Ala. 235, 314 So.2d 695 (1975); White v. Sims, supra.
AFFIRMED.
TORBERT, C. J. and BLOODWORTH, FAULKNER and ALMON, JJ., concur.